Attorney Grievance Comm'n v. Jerome P. Johnson, Misc. Docket AG No. 68, September Term, 2015

**ATTORNEY DISCIPLINE – SANCTIONS – ONE-YEAR SUSPENSION –** Court of Appeals suspended from practice of law in Maryland for one year lawyer who failed to diligently represent client, failed to adequately communicate with client, failed to take steps to protect client's interests after representation ended, failed to respond to Bar Counsel's numerous lawful demands for information, and whose conduct was prejudicial to administration of justice. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), 1.16(d) (Terminating Representation), 8.1(b) (Disciplinary Matters), 8.4(d) (Conduct that Is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC).

Circuit Court for Harford County
Case No. 12-C-16-000253

Argued: November 4, 2016

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 68

September Term, 2015

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JEROME P. JOHNSON

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: December 14, 2016

This attorney discipline proceeding involves a lawyer who failed to diligently represent a client, failed to adequately communicate with the client, failed to take steps to protect the client's interests after the lawyer's representation ended, failed to respond to Bar Counsel's numerous lawful demands for information, and engaged in conduct that was prejudicial to the administration of justice.

Terrance Venable, Jr. ("Venable") retained Jerome P. Johnson ("Johnson"), Respondent, a member of the Bar of Maryland, to represent him in a child support case in the Circuit Court for Anne Arundel County ("the circuit court"). Despite having advised in open court at a hearing before a magistrate that he would enter his appearance in the child support case, Johnson neither filed his appearance with the circuit court's Civil Department nor paid the appearance fee. After the hearing, the magistrate issued a Report and Recommendations, and Venable asked Johnson to file exceptions. Johnson agreed to do so, and charged an additional fee for the exceptions. Johnson failed to timely file the exceptions; instead, he mailed the exceptions to the circuit court on or after the due date. The circuit court closed the child support case, and the Civil Department returned the exceptions to Johnson. Johnson did not make any attempt to rectify the consequences of his failure to file his appearance or pay the appearance fee, such as refunding the fee for the exceptions. Johnson did not inform Venable that he had failed to pay the appearance fee, that he had mailed the exceptions late, and that the circuit court's Civil Department had returned the exceptions. Additionally, Johnson failed to respond to Venable's requests for updates about the child support case. Venable ultimately filed a complaint against Johnson with Bar Counsel.

On January 21, 2016, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Johnson, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), 1.5(b) (Communication of Fees), 1.16(d) (Terminating Representation), 8.1(b) (Disciplinary Matters), 8.4(d) (Conduct that Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC).[1]

On January 27, 2016, this Court designated the Honorable Yolanda L. Curtin ("the hearing judge") of the Circuit Court for Harford County to hear this attorney discipline proceeding. On February 16, 2016, the Petition for Disciplinary or Remedial Action was personally served on Johnson. Johnson's answer to the Petition for Disciplinary or Remedial Action was due fifteen days later, on March 2, 2016. Johnson failed to file an answer by the due date.

On March 21, 2016, Bar Counsel filed with the hearing judge a Motion for Order of Default. On March 22, 2016, twenty days after the due date, Johnson filed with the hearing judge a "Motion to Extend Time to Answer Complaint" ("the motion to extend time"). In the motion to extend time, Johnson stated that he had been attempting to retain counsel and was "submitting a request to the [Attorney Grievance] Commission in an attempt to resolve

---

[1]Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct, or MARPC, and renumbered. The revised Rules relevant to this case are now numbered as follows: Maryland Rules 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5 (Fees), 19-301.16 (Declining or Terminating Representation), 19-308.1 (Bar Admission and Disciplinary Matters), and 19-308.4 (Misconduct). We will refer to the MLRPC because the misconduct at issue occurred before this change.

the" attorney discipline proceeding. Johnson stated that he requested additional time to file an answer so that he could consult with and/or retain counsel, and await a response from the Attorney Grievance Commission regarding his request. In the motion to extend time, Johnson provided no specific information concerning his "request" to the Attorney Grievance Commission.

Bar Counsel did not object to the motion to extend time. On April 7, 2016, without ruling on the Motion for Order of Default, the hearing judge granted the motion to extend time and ordered Johnson to file an answer by April 18, 2016. Once again, Johnson failed to file an answer by that date. On April 18, 2016, Bar Counsel mailed to Johnson Interrogatories, a Request for Production of Documents, and a Request for Admission of Facts and Genuineness of Documents.

On April 20, 2016, Johnson filed with the hearing judge a "Motion for Leave to Petition Court of Appeals for Remand" ("the motion for leave"). In the motion for leave, Johnson stated that the Attorney Grievance Commission had informed him that it no longer had jurisdiction over the attorney discipline proceeding, and that, as such, Johnson had to file any request for relief with the hearing judge or this Court. Johnson alleged that there had been "procedural deficiencies under M[aryland] Rule 16-700[,]" and that the Rule "provides no instructions as to addressing alleged procedural deficiencies[.]" Johnson requested that the hearing judge grant him leave to file a "motion for relief" with the hearing judge or this Court. The basis on which Johnson sought to file a "motion for relief" is unclear because Johnson did not provide any information regarding the "alleged procedural deficiencies," and because Maryland Rule 16-700 does not exist. In the motion

for leave, Johnson did not address his failure to file an answer by the court-ordered deadline of April 18, 2016.

On April 29, 2016, the hearing judge denied the motion for leave, and issued an order of default against Johnson for the failure to file an answer. The order of default included notice to the parties that a hearing on the Petition for Disciplinary or Remedial Action had been scheduled for June 6, 2016. On May 2, 2016, the order of default was entered. On May 3, 2016, the Office of the Clerk of the Circuit Court for Harford County mailed to Johnson a notice that advised that Johnson could move to vacate the order of default within thirty days of the date of entry of the order of default. The notice also advised that a motion to vacate must state the reasons for Johnson's failure to file an answer and the legal and factual bases for a defense against Bar Counsel's charges.

The thirtieth day after the date of entry of the order of default was June 1, 2016. Accordingly, the deadline for a motion to vacate the order of default was June 1, 2016.

On June 2, 2016, Johnson filed with the hearing judge an untimely "Motion to Vacate Default Order and Reconsideration of Leave to Petition Court of Appeals for Remand" ("the motion to vacate"). Much of the motion to vacate was identical to the motion for leave. For example, Johnson again alleged that there had been procedural defects under "M[aryland] Rule 16-700[,]" and requested that the hearing judge vacate the order of default and permit him to file a "motion for relief[.]" In the motion to vacate, Johnson acknowledged that the hearing judge had ordered him to file an answer by April 18, 2016, but stated that he did not do so because filing an answer before the hearing judge ruled on the motion for leave would have "compromise[d] his . . . rights under" Maryland

Rule 2-322. Maryland Rule 2-322(a) requires certain defenses to be asserted in a motion to dismiss before an answer is filed and states:

> The following defenses shall be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the person, (2) improper venue, (3) insufficiency of process, and (4) insufficiency of service of process. If not so made and the answer is filed, these defenses are waived.[2]

In the motion to vacate, Johnson did not explain how Maryland Rule 2-322 applied to his anticipated "motion for relief."

On June 6, 2016, the hearing judge conducted a hearing, at which the hearing judge gave the parties the opportunity to be heard regarding the motion to vacate, and denied the motion to vacate. During his argument regarding the motion to vacate, Bar Counsel advised the hearing judge that Johnson had failed to respond to Bar Counsel's April 18, 2016 discovery requests; before the hearing judge denied the motion to vacate, Johnson essentially acknowledged failing to respond to the discovery requests. Immediately after denying the motion to vacate, in response to Bar Counsel's offer, the hearing judge advised that Bar Counsel's filing would be accepted by the hearing judge to consider in rendering an opinion in the matter. Without objection, Bar Counsel offered, and the hearing judge

---

[2]Maryland Rule 2-322(b) allows certain defenses to be asserted in an answer or before or after an answer is filed, stating:

> The following defenses may be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the subject matter, (2) failure to state a claim upon which relief can be granted, (3) failure to join a party under Rule 2-211, (4) discharge in bankruptcy, and (5) governmental immunity. If not so made, these defenses and objections may be made in the answer, or in any other appropriate manner after answer is filed.

admitted into evidence, a binder that included twenty-one documents. The hearing judge asked whether Bar Counsel had any additional evidence, and Bar Counsel responded in the negative. The hearing judge advised Johnson: "[Y]ou don't have the opportunity to present evidence, obviously, because we're in a default posture; however, I do want to give you the opportunity to present to the Court, with Bar Counsel being present here, any mitigation that you would like me to consider on your behalf." Johnson responded only that he had no prior attorney discipline.

On August 3, 2016, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Johnson had violated MLRPC 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.16(d), 8.1(b), 8.4(d), and 8.4(a), but had not violated MLRPC 1.5(b).

On November 4, 2016, we heard oral argument. For the below reasons, we suspend Johnson from the practice of law in Maryland for one year.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On June 23, 1998, this Court admitted Johnson to the Bar of Maryland.

### Johnson's Representation of Venable

On or about December 11, 2013, Venable retained Johnson to represent him in a child support case in the Circuit Court for Anne Arundel County. Venable paid Johnson $1,250 to appear at a merits hearing that was scheduled for December 16, 2013. On that date, Johnson appeared before a magistrate of the circuit court. In open court, Johnson stated that he would file his appearance with the circuit court's Civil Department. Johnson

never filed his appearance or paid the appearance fee.

On December 16, 2013, the magistrate issued a Report and Recommendations.[3] Afterward, Venable asked Johnson to file exceptions to the magistrate's Report and Recommendations. Johnson agreed to do so for an additional fee of $775. Later, Johnson asked Venable for $1,500, which was a combination of the $775 fee for the exceptions and a $725 initial deposit for the child custody case. Johnson told Venable that he could pay in installments. Venable paid Johnson the $775 fee for the exceptions as follows: $375 on December 26, 2013; $150 on January 5, 2014; $125 on January 17, 2014; and $125 on January 31, 2014. Venable did not make any additional payments to Johnson.

The exceptions were due on December 26, 2013—ten days after the magistrate issued the Report and Recommendations. Johnson failed to timely file the exceptions; instead, he mailed the exceptions to the circuit court on or after December 26, 2013.[4] On January 2, 2014, the circuit court received the exceptions. On January 6, 2014, the circuit

---

[3]According to exceptions that Johnson prepared, under the magistrate's Report and Recommendations, Venable's child support obligation would be $975 per month, and his arrearage would be $5,675, payable at $25 per month; accordingly, Venable would be required to pay $1,000 per month.

[4]In one part of the opinion, the hearing judge stated that Johnson mailed the exceptions to the circuit court on or about December 29, 2013. In another part of the opinion, the hearing judge stated that Johnson mailed the exceptions to the circuit court "on the due date[,]" which was December 26, 2013. The certificate of service of the exceptions, which Johnson completed and signed, states that a copy of the exceptions was mailed to opposing counsel on December 29, 2013. Regardless of whether Johnson mailed the exceptions on December 26 or December 29, the hearing judge found that Johnson failed to timely file the exceptions, and that the circuit court did not receive the exceptions until January 2, 2014.

court issued an order closing the child support case.[5]  On or about January 10, 2014, the circuit court's Civil Department returned the exceptions to Johnson with a notice that the exceptions were being returned because the appearance fee had not been paid, and because the circuit court had issued an order closing the child support case.

Johnson failed to make any attempt to rectify the consequences of his failure to pay the appearance fee.  Johnson did not refund to Venable the $775 fee for the exceptions, despite the exceptions having been returned.  Johnson failed to notify Venable that he had not paid the appearance fee, that he had submitted the exceptions on or after the due date, and that the circuit court's Civil Department had returned the exceptions.

Between February 3 and February 18, 2014, on multiple occasions, Venable text messaged Johnson to ask about the status of the exceptions.  Johnson failed to respond to Johnson's text messages.  On February 18, 2014, Venable e-mailed Johnson, again asking about the status of the exceptions, and stating that he had learned from both the circuit court and the Maryland Judiciary Case Search that the child support case was closed.

On February 20, 2014, Johnson e-mailed Venable, stating that he had attached "the filings on your behalf" and that he was "awaiting a Judge's response to our motion for reconsideration."  Johnson attached to the e-mail an unsigned "Order" for the exceptions, and an unsigned "Petition to Modify Custody & Visitation and Request for Hearing and

_____

[5]According to a docket entry in the child support case, on January 6, 2014, the circuit court issued a consent order regarding child custody, reimbursement of medical bills, medical insurance, and Venable's earlier request for DNA testing to determine paternity. According to another docket entry in the child support case, on January 15, 2014, the circuit court issued an earnings withholding order against Venable.

- 8 -

other Relief" that was dated January 27, 2014. Contrary to Johnson's claim in his e-mail to Venable, Johnson had never filed a motion for reconsideration in the child support case.[6]

**Bar Counsel's Investigation**

On March 14, 2014, Venable filed a complaint against Johnson with Bar Counsel. In a letter dated April 2, 2014, Bar Counsel notified Johnson of Venable's complaint, and requested a response within fifteen days. Johnson failed to respond.

In a letter dated April 28, 2014, Bar Counsel requested a response within ten days. In a letter dated May 9, 2014, Johnson requested a "one-time extension" until May 23, 2014 to respond to Venable's complaint. On May 19, 2014, Bar Counsel granted Johnson's request for an extension. On May 23, 2014, Johnson sent a response to Venable's complaint. In his response, Johnson alleged that he had filed his appearance on December 16, 2013. Johnson's allegation was inconsistent with both information that Venable had provided and a docket entry in the child support case dated December 16, 2013, stating that Johnson was "to file" his appearance.

In a letter dated July 15, 2014, Bar Counsel requested documents and additional information from Johnson within ten days. Specifically, Bar Counsel requested copies of: Johnson's alleged filing of appearance; the exceptions to the magistrate's Report and Recommendations; all retainer agreements and correspondence between Johnson and Venable regarding the child custody case; documents that showed an accounting of Venable's payments; and documents that showed distributions from Johnson's attorney

---

[6]We note that, inexplicably, Bar Counsel did not charge Johnson with violating MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation).

- 9 -

trust account. Bar Counsel also asked Johnson to explain why he mailed the exceptions on or after December 26, 2013, when he had only until December 26, 2013, to file the exceptions.

Johnson failed to respond to Bar Counsel's request. In a letter dated July 31, 2014, Bar Counsel again requested documents and additional information from Johnson, and informed him that MLRPC 8.1 (Disciplinary Matters) required him to comply. Again, Johnson failed to respond. In a letter dated August 8, 2014, Bar Counsel again requested documents and additional information from Johnson, reminded him of his obligation to comply under MLRPC 8.1, and asked him to respond by August 18, 2014.

On August 25, 2014, Johnson and a Senior Assistant Bar Counsel spoke on the telephone. During that conversation, Johnson asked for an extension until September 8, 2014. Bar Counsel granted the extension. In a letter dated August 26, 2014, Bar Counsel confirmed that Johnson would provide the requested documents and additional information by September 8, 2014. Johnson failed to do so.

In letters dated September 11, 2014 and September 30, 2014, Bar Counsel again requested documents and additional information. In the September 30, 2014 letter, Bar Counsel notified Johnson that Venable's complaint would be docketed and there would be an investigation as to whether Johnson had violated the MLRPC. Bar Counsel noted that Johnson had failed to respond to Bar Counsel's demands for information, and provided Johnson with one last chance to provide documents and additional information within fifteen days of the letter. Johnson never responded to Bar Counsel's September 11, 2014 and September 30, 2014 letters, and never responded to Bar Counsel's multiple requests

for documents and additional information.

**Aggravating Factors and Mitigating Factors**

As to aggravating factors, without expressly labeling the circumstances as aggravating factors, the hearing judge noted that Johnson had committed multiple violations of the MLRPC. The hearing judge also found that Johnson had failed to deal with Bar Counsel in good faith, and instead had repeatedly refused to cooperate with Bar Counsel's lawful demands for information. Additionally, the hearing judge found that Johnson had failed to acknowledge his misconduct's wrongful nature, and had failed to rectify the consequences of his misconduct.

The hearing judge found that the only mitigating factor was the absence of prior attorney discipline.

**STANDARD OF REVIEW**

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Shuler, 443 Md. 494, 501, 117 A.3d 38, 43 (2015) ("[T]his Court reviews for clear error a hearing judge's findings of fact[.]" (Citations omitted)); Md. R. 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by

clear and convincing evidence.").

## DISCUSSION

### (A) The Motion to Vacate

In a document entitled "Exceptions to Findings of Fact and Conclusions of Law" ("Johnson's exceptions"), Johnson contends that the hearing judge erred in denying the motion to vacate the order of default. Johnson points out that he advised the hearing judge that he did not file an answer to the Petition for Disciplinary or Remedial Action because his "pre-answer Maryland Rule 2-322 arguments would [have] be[en] compromised." (Emphasis omitted). Johnson also alleges that he argued before the hearing judge that there were inconsistencies in the Petition for Disciplinary or Remedial Action, and that there were "various Peer Review Hearing violations. (See [Johnson]'s Circuit Court Exhibits)[.]" Presumably, the exhibits to which Johnson refers are the two exhibits attached to the motion to vacate. One such exhibit was a letter to the Attorney Grievance Commission's Executive Secretary dated March 24, 2016, in which Johnson accused certain members of the Peer Review Panel of being "biased" and alleged that the Petition for Disciplinary or Remedial Action was "rife with inaccuracies[.]"[7] Overall, in his exceptions, Johnson maintains that the order of default "severely prejudiced" him, and he asks that the matter be remanded to the hearing judge with instructions to vacate the order

---

[7]The second exhibit is a letter to Johnson dated March 29, 2016, in which the Attorney Grievance Commission's Executive Secretary advised that the Attorney Grievance Commission no longer had jurisdiction over the attorney discipline proceeding, and that, as such, Johnson had to file any request for relief with the hearing judge or this Court.

- 12 -

of default.

We find no merit in Johnson's contention that the hearing judge erred in denying the motion to vacate the order of default. Any one of the following three circumstances, when considered alone, provided a basis for denying the motion to vacate. First, the motion to vacate was untimely. Second, the motion to vacate did not establish that there was a substantial and sufficient basis for an actual controversy as to the merits of the attorney discipline proceeding. Third, the motion to vacate did not establish that it was equitable to excuse Johnson's failure to file an answer.

Indisputably, the order of default was properly issued, and Johnson's motion to vacate was untimely. The Petition for Disciplinary or Remedial Action was personally served on Johnson on February 16, 2016; thus, under Maryland Rule 16-754(a) ("Within 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve a copy on [Bar Counsel]."),[8] Johnson's answer to the Petition for Disciplinary or Remedial Action was due fifteen days later, on March 2, 2016. Johnson failed to file an answer by that date.

On March 21, 2016, Bar Counsel filed with the hearing judge a Motion for Order of Default. On March 22, 2016, Johnson filed with the hearing judge a motion to extend time to file an answer. Bar Counsel did not object to the motion to extend time. On April 7, 2016, the hearing judge granted the motion to extend time and ordered Johnson to file an answer by April 18, 2016. Again, Johnson failed to file an answer.

---

[8]Effective July 1, 2016, Maryland Rule 16-754(a) was renumbered as Maryland Rule 19-724(a)(1).

- 13 -

On April 20, 2016, Johnson filed with the hearing judge the motion for leave, in which he did not address his failure to file an answer by the court-ordered deadline of April 18, 2016. On April 29, 2016, the hearing judge denied the motion for leave, and, on May 2, 2016, an order of default was entered against Johnson for his failure to file an answer.

The hearing judge's issuance of the order of default was warranted under Maryland Rule 16-754(c), which states: "If the time for filing an answer has expired and the respondent has failed to file an answer . . . , the [hearing judge] **shall** treat the failure as a default, and the provisions of Rule 2-613 shall apply." (Emphasis added).[9] As to an order of default, Maryland Rule 2-613 provides in pertinent part:

> **(c) Notice.** Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.
>
> **(d) Motion by defendant.** The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.
>
> **(e) Disposition of motion.** If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

On May 3, 2016, the Office of the Clerk of the Circuit Court for Harford County complied with Maryland Rule 2-613(c) by mailing to Johnson a notice that advised that an order of default had been entered and that Johnson could move to vacate the order of default

---

[9]Effective July 1, 2016, Maryland Rule 16-754(c) was renumbered now Maryland Rule 19-724(c).

within thirty days of the date of entry of the order. The deadline for filing a motion to vacate was June 1, 2016. Johnson did not file a motion to vacate by the due date. Instead, Johnson filed a motion to vacate on June 2, 2016. Johnson's failure to timely file a motion to vacate, alone, warranted the hearing judge's denial of the untimely motion to vacate.

Even if the motion to vacate had been timely filed, the hearing judge correctly denied the motion to vacate as it did not establish that there was "a substantial and sufficient basis for an actual controversy as to the merits of the" attorney discipline proceeding, as required by Maryland Rule 2-613(e). In the motion to vacate, Johnson simply alleged the existence of procedural deficiencies, as he had alleged in the motion for leave. Although Johnson attached to the motion to vacate a letter in which he alleged that the Petition for Disciplinary or Remedial Action was "rife with inaccuracies[,]" Johnson provided no evidence of any inaccuracies aside from his own allegations. For example, in the letter attached to the motion to vacate, Johnson asserted that Venable retained him after the due date for exceptions to the magistrate's Report and Recommendations, but Johnson did not provide any evidence that would have supported his allegation, such as a retainer agreement. In sum, the motion to vacate did not establish a substantial and sufficient basis for an actual controversy as to the merits of the attorney discipline proceeding.

The hearing judge also correctly denied the motion to vacate because the motion to vacate did not establish "that it [wa]s equitable to excuse the failure to" file an answer, as required by Maryland Rule 2-613(e). In the motion to vacate, Johnson acknowledged that the hearing judge had ordered him to file an answer by April 18, 2016, but indicated that he was awaiting a ruling on the motion for leave. As discussed above, the motion for leave

was groundless and failed to set forth any cognizable basis for relief or defense to Bar Counsel's charges. Further, Johnson filed the motion for leave two days after the court-ordered deadline for filing an answer—in other words, as of the court-ordered deadline for filing an answer, Johnson could not have been awaiting a ruling on the motion for leave. Johnson's purported desire to await a ruling on the motion for leave in no way excused his failure to file an answer.

For the above reasons, the hearing judge correctly denied the untimely motion to vacate.

**(B) Whether to Conduct an Evidentiary Hearing in the Event of Default**

Before addressing the propriety of the hearing judge's findings of fact and conclusions of law, we pause to address a matter of significance: namely, whether a hearing judge in an attorney discipline proceeding may refrain from conducting an evidentiary hearing where the hearing judge has entered an order of default. Here, aside from admitting into evidence Bar Counsel's binder of twenty-one documents and giving Johnson the opportunity to address mitigating factors, the hearing judge did not conduct an evidentiary hearing, no witnesses were called, and no other evidence was offered.

In several cases where hearing judges conducted evidentiary hearings, based on Maryland Rule 2-323(e), this Court has stated that averments in Petitions for Disciplinary or Remedial Action are to be treated as admitted where a lawyer failed to timely file an answer and the hearing judge entered an order of default. In Attorney Grievance Comm'n v. Lee, 390 Md. 517, 523-24, 524 n.7, 890 A.2d 273, 277 & n.7 (2006), where a lawyer failed to timely file an answer, and a hearing judge entered an order of default but

- 16 -

conducted an evidentiary hearing at which Bar Counsel was forced "to expend considerable effort to establish a factual basis for the [hearing judge] to act upon[,]" this Court stated: "Rule 2-323(e) permits the court to treat the averments in a pleading as admitted unless denied. Because the averments were not denied, we treat them as admitted." This Court noted that the evidentiary hearing was "unnecessarily protracted" because the hearing judge "did not recognize until late in the [evidentiary hearing] that it could" treat the averments in the Petition for Disciplinary or Remedial Action as admitted. Id. at 524 & n.7, 890 A.2d at 277 & n.7.

Similarly, in Attorney Grievance Comm'n v. Steinberg, 395 Md. 337, 351-52, 346, 910 A.2d 429, 437-38, 434 (2006), where a lawyer failed to timely file an answer, and a hearing judge entered an order of default and conducted an evidentiary hearing that the lawyer did not attend, and at which Bar Counsel was permitted to offer testimony in support of the Petition for Disciplinary or Remedial Action, this Court stated:

> Under Maryland Rule 2-323(e), the averments set forth in the petition are deemed admitted unless denied in a timely responsive pleading. In this case, because the averments in the Petition [for Disciplinary or Remedial Action] were not denied by [the lawyer] in a timely filed responsive pleading, the averments and the testimony from the *ex parte* hearing were treated properly as admitted.

(Citing Lee, 390 Md. at 523-24, 890 A.2d at 277) (footnote omitted).

In Attorney Grievance Comm'n v. Lawson, 428 Md. 102, 106 & n.1, 50 A.3d 1196, 1198 & n.1 (2012), where a lawyer failed to timely file an answer, and the hearing judge entered an order of default and conducted a hearing at which the hearing judge "received documentary and testimonial evidence[,]" this Court stated: "As a result of the default, the

averments contained in the [] Petition for Disciplinary Action were deemed admitted, and we consider them as true under Rules 2-613(f) and 2-323(e)." (Citing <u>Lee</u>, 390 Md. at 524 n.7, 890 A.2d at 277 n.7).

Most recently, in <u>Attorney Grievance Comm'n v. Thomas</u>, 440 Md. 523, 550, 546, 103 A.3d 629, 645, 642-43 (2014), where a lawyer failed to timely file an answer, and a hearing judge entered an order of default but conducted a hearing and made findings of fact that were inconsistent with the averments in the Petition for Disciplinary or Remedial Action, this Court stated:

> The well-pleaded averments in the [Petition for Disciplinary or Remedial Action] in the present case were not denied. An Order of Default was entered in the case, and not vacated. Thus, we accept those averments as admitted. We shall not consider the hearing judge's findings of fact and conclusions of law (or Bar Counsel's exceptions to them) because **there was no apparent need for a full-blown evidentiary hearing in this case**, although we recognize that our conclusion in this latter regard is reached only with the benefit of hindsight.

(Emphasis added) (footnote omitted). In <u>Thomas</u>, <u>id.</u> at 550, 103 A.3d at 645, as in <u>Lee</u>, 390 Md. at 524, 890 A.2d at 277, where there was an order of default, this Court characterized the evidentiary hearing as unnecessarily lengthy.

In this case, the hearing judge did not conduct a lengthy hearing like the ones in <u>Thomas</u> and <u>Lee</u>. After the hearing judge ruled on the motion to vacate, Bar Counsel offered and the hearing judge admitted into evidence a binder of twenty-one documents, and, when given the opportunity to address mitigating factors, Johnson stated that he had no prior attorney discipline.

Although <u>Thomas</u>'s and <u>Lee</u>'s circumstances differed from those of the instant

attorney discipline proceeding, we find both cases instructive, in that in both cases this Court made clear that a protracted evidentiary hearing is unnecessary in the event of an order of default. Where Bar Counsel offers no evidence or a small amount of evidence and then rests, the hearing judge is not obligated to seek additional evidence from Bar Counsel. Indeed, where an order of default has been entered in a case and not vacated, the hearing judge may accept the averments in the Petition for Disciplinary or Remedial Action as admitted and is not obligated to conduct a hearing. Maryland Rule 2-323(e) provides: "Averments in a pleading to which a responsive pleading is required . . . are admitted unless denied in the responsive pleading or covered by a general denial." We reaffirm that which was stated in Thomas, 440 Md. at 550, 103 A.3d at 645, that a hearing judge takes unnecessary action in conducting "a full-blown evidentiary hearing" in light of the existence of an order of default. We now unequivocally hold that a hearing judge in an attorney discipline proceeding may refrain from conducting an evidentiary hearing where the hearing judge has entered an order of default that has not been vacated.

### (C) Findings of Fact

Bar Counsel does not except to any of the hearing judge's findings of fact. In his exceptions, Johnson excepts to multiple findings of fact. Because Johnson failed to timely file an answer, and the hearing judge entered an order of default, the averments in the Petition for Disciplinary or Remedial Action are deemed admitted under Maryland Rule 2-323(e). Accordingly, we overrule Johnson's exceptions.

Even if the averments in the Petition for Disciplinary or Remedial Action were not deemed admitted, we would overrule Johnson's exceptions because, as to each of his

exceptions, without referencing any part of the record, Johnson simply makes unsubstantiated factual allegations that are inconsistent with the hearing judge's findings of fact. Specifically, Johnson alleges that Venable retained him after the due date for exceptions to the magistrate's Report and Recommendations; that he in fact filed his appearance with the circuit court's Civil Department; that he "was in constant communication with" Venable throughout the child support case; that he refunded half of his fee to Venable; that he was in contact with Bar Counsel throughout Bar Counsel's investigation; that he provided the documents that Bar Counsel requested; and that he had a "difficult history" with the Senior Assistant Bar Counsel who was assigned to this attorney discipline proceeding. Johnson fails, however, to allege that the record supports any of these allegations or to provide any substantiation for the allegations.

## (D) Conclusions of Law

Bar Counsel does not except to any of the hearing judge's conclusions of law. Johnson excepts to all of the hearing judge's conclusions of law, other than the hearing judge's conclusion that he did not violate MLRPC 1.5(b). We overrule Johnson's exceptions and uphold all of the hearing judge's conclusions of law.

### MLRPC 1.3 (Diligence)

"A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3.

Here, clear and convincing evidence supports the hearing judge's conclusion that Johnson violated MLRPC 1.3. Despite his promise to do so in open court, Johnson never filed his appearance with the circuit court's Civil Department or paid the appearance fee in

the child support case. Johnson also failed to make any attempt to rectify the consequences of his failure to pay the appearance fee. Additionally, Johnson failed to timely file exceptions to the magistrate's Report and Recommendations; instead, he mailed the exceptions to the circuit court on or after the due date. These actions constituted a complete lack of diligence in representing Venable.

## MLRPC 1.4(a)(2), 1.4(a)(3), and 1.4(b) (Communication)

"A lawyer shall[] . . . (2) keep the client reasonably informed about the status of the matter; [and] (3) promptly comply with reasonable requests for information[.]" MLRPC 1.4(a) (paragraph break omitted). "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." MLRPC 1.4(b).

Here, clear and convincing evidence supports the hearing judge's conclusions that Johnson violated MLRPC 1.4(a)(2) and 1.4(b). Johnson did not inform Venable that he had failed to pay the appearance fee, that he had not timely filed the exceptions—*i.e.*, that he had mailed the exceptions on or after the due date—and that the circuit court's Civil Department had returned the exceptions. Johnson's duty to keep Venable reasonably informed obligated him to inform Venable of these circumstances. Johnson's failure to disclose these circumstances deprived Venable of the ability to make informed decisions.

Clear and convincing evidence also supports the hearing judge's conclusion that Johnson violated MLRPC 1.4(a)(3). Between February 3 and February 18, 2014, on multiple occasions, Venable text messaged Johnson to ask about the status of the exceptions. Johnson failed to respond to Venable's text messages. On February 18, 2014,

- 21 -

Venable e-mailed Johnson, again asking about the status of the exceptions. Johnson did not respond to Venable at all until February 20, 2014, at which point Johnson falsely advised that he was awaiting a response to a motion to reconsider. Johnson violated MLRPC 1.4(a)(3) by failing to respond promptly to Venable's communications.

### MLRPC 1.5(b) (Communication of Fees)

MLRPC 1.5(b) states:

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that Johnson had violated MLRPC 1.5(b). Venable paid Johnson $1,250 to appear at a hearing before a magistrate, and Johnson did so. Afterward, Venable asked Johnson to file exceptions to the magistrate's Report and Recommendations. Johnson agreed to do so for an additional fee of $775. Later, Johnson asked Venable for $1,500, which was a combination of the $775 fee for the exceptions and a $725 initial deposit for a child custody case. Venable paid the $775 fee for the exceptions in installments, and did not make any additional payments to Johnson. Johnson advised in advance that the fee for the exceptions would be $775, and Johnson did not change the amount of the fee for the exceptions or the amount of the initial deposit for the child custody case.

## MLRPC 1.16(d) (Terminating Representation)

MLRPC 1.16(d) provides in pertinent part:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expense that has not been earned or incurred.

Clear and convincing evidence supports the hearing judge's conclusion that Johnson violated MLRPC 1.16(d). Once the circuit court issued an order closing the child support case, Johnson's representation was effectively over. Johnson, however, failed to provide reasonable notice to Venable by informing him that the circuit court had closed the case. Venable discovered this on his own. Additionally, Johnson did not refund to Venable the $775 fee for the exceptions, despite the circumstance that the circuit court's Civil Department had returned the exceptions.

## MLRPC 8.1(b) (Disciplinary Matters)

"[A] lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] disciplinary authority[.]" MLRPC 8.1(b).

Clear and convincing evidence supports the hearing judge's conclusion that Johnson violated MLRPC 8.1(b). Bar Counsel sent two letters to Johnson—dated April 2 and April 28, 2014—and granted a request by Johnson for an extension before Johnson provided a response to Venable's complaint, in a letter dated May 23, 2014. Afterward, in a total of six letters dated July 15, July 31, August 8, August 26, September 11, and September 30,

2014, Bar Counsel requested documents and additional information from Johnson. In the letters dated July 31 and August 8, 2014, Bar Counsel informed Johnson that MLRPC 8.1 required him to comply. Additionally, during a conversation on the telephone on August 25, 2014, Johnson requested an extension until September 8, 2014, which Bar Counsel granted. Nevertheless, Johnson never provided the documents and additional information that Bar Counsel had requested, and never otherwise responded to Bar Counsel's six letters.

**MLRPC 8.4(d) (Conduct that Is Prejudicial to the Administration of Justice)**

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public[.]" Shuler, 443 Md. at 505, 117 A.3d at 45 (brackets, citation, ellipsis, and internal quotation marks omitted). A lawyer violates MLRPC 8.4(d) "by failing to provide competent and diligent representation and failing to adequately communicate with" clients. Attorney Grievance Comm'n v. Chanthunya, 446 Md. 576, 603, 133 A.3d 1034, 1050 (2016).

Clear and convincing evidence supports the hearing judge's conclusion that Johnson violated MLRPC 8.4(d). Johnson failed to diligently represent Venable, failed to adequately communicate with Venable, failed to take steps to protect Venable's interests after Johnson's representation ended, and failed to respond to Bar Counsel's numerous lawful demands for information. Johnson's misconduct would negatively impact a reasonable member of the public's perception of the legal profession.

## MLRPC 8.4(a) (Violating the MLRPC)

"It is professional misconduct for a lawyer to[] violate . . . the" MLRPC. MLRPC 8.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that Johnson violated MLRPC 8.4(a). As discussed above, Johnson violated MLRPC 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.16(d), 8.1(b), and 8.4(d).

## (E) Sanction

Bar Counsel recommends that we indefinitely suspend Johnson from the practice of law in Maryland. In his exceptions, Johnson requested that we dismiss the Petition for Disciplinary or Remedial Action. At oral argument, Johnson stated that, if we did not reverse the hearing judge's denial of the motion to vacate the order of default, a reprimand or a "dismissal with a warning" would be the appropriate sanction.

In Shuler, 443 Md. at 506-07, 117 A.3d at 46, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.
>
> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.
>
> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with [rules or orders of the disciplinary agency]; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a

refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to [Bar Counsel] or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Brackets, citation, and ellipses omitted).

In Attorney Grievance Comm'n v. Gray, 433 Md. 516, 533, 522-23, 524-35, 521, 72 A.3d 174, 184, 178, 179-80, 177 (2013), this Court suspended from the practice of law in Maryland for sixty days a lawyer who had violated MLRPC 1.3 (Diligence), 1.4 (Communication), 1.15(e) (Safekeeping Property), and MLRPC 8.1(b) (Disciplinary Matters) in one matter, and violated MLRPC 8.1(b) in another matter. In Gray, id. at 521, 72 A.3d at 177, a client retained the lawyer to represent her in a case that resulted in the distribution of the proceeds from the sale of a home that the parties had owned. The funds were deposited into an escrow account, and the client was immediately entitled to her share of the funds. See id. at 521, 72 A.3d at 177. Nonetheless, the lawyer did not write a check

for the client's share of the funds for more than four years.  See id. at 521, 72 A.3d at 177.

Nearly three years later, the lawyer received notice that the client had not cashed the check

and that the escrow account was about to be closed, in which case any funds therein would

escheat to the State.  See id. at 522, 72 A.3d at 177.  The lawyer did not write a second

check for the client's share of the funds until nearly a year after receiving the notice.  See

id. at 522, 72 A.3d at 178.  The client was "'taken aback'" that the lawyer had never

informed her that she had been entitled to the funds for approximately eight years.  Id. at

522, 72 A.3d at 178.  After the attorney discipline proceeding began, the lawyer failed to

respond to multiple letters by Bar Counsel seeking information about the lawyer's

representation of the client.  See id. at 523, 72 A.3d at 178.

Although Bar Counsel charged the lawyer with violations of multiple MLRPC in

representing a second client, the hearing judge concluded that the lawyer violated only

MLRPC 8.1(b) (Disciplinary Matters) as to the second client's matter, and Bar Counsel did

not except to the hearing judge's conclusions of law as to the second client's matter.  See

id. at 520-21, 72 A.3d at 176-77.

In Gray, id. at 525, 72 A.3d at 180, in determining the appropriate sanction, this

Court noted that the lawyer had recently been reprimanded for "somewhat similar

misconduct."  This Court did not note any other aggravating factors, or any mitigating

factors.  See id. at 525-33, 72 A.3d at 180-84.  This Court concluded that a sixty-day

suspension was appropriate in light of the lawyer's prior discipline and multiple violations

of the MLRPC, especially her violation of MLRPC 8.1(b).  See id. at 533, 72 A.3d at 184.

In Attorney Grievance Comm'n v. Harris, 366 Md. 376, 406, 405, 784 A.2d 516,

- 27 -

533, 532 (2001), this Court suspended from the practice of law in Maryland for six months a lawyer who had violated MLRPC 1.4(b) (Communication) in one matter, and violated MLRPC 1.1 (Competence), 1.3 (Diligence), 1.4(a) (Communication), 1.16(a)(2) (Declining or Terminating Representation), 3.2 (Expediting Litigation), and 8.4(d) (Conduct that Is Prejudicial to the Administration of Justice) in two matters. In one matter, the lawyer failed to file a complaint until nearly three years after his client's accident, failed to serve the defendant, failed to appear at a hearing, failed to keep his clients informed about the status of their case, and failed to explain the consequences of allowing their case to be dismissed. See id. at 393-94, 396-97, 784 A.2d at 526, 528. In another matter, the lawyer failed to respond to interrogatories, failed to appear at trial, and failed to keep his client reasonably informed about the status of her case. See id. at 395-96, 399, 784 A.2d at 527, 529. In each of the two matters, the lawyer violated his duty to withdraw from his representation when problems in his personal life made him no longer able to adequately represent his clients. See id. at 400-01, 784 A.2d at 530.

Although this Court did not use the term "aggravating factors," this Court observed that the lawyer had received prior attorney discipline, and that the lawyer had engaged in "a recurring pattern of" lack of diligence on clients' behalf. Id. at 405, 406, 784 A.2d at 533. At the same time, this Court recognized several significant "extenuating circumstances"—specifically, around the time that he failed to appear for trial in one matter and failed to serve the defendant in the other matter, the lawyer had recently undergone "serious cancer surgery[,]" which resulted in complications and aftereffects; the lawyer's mother had recently died; the lawyer's other parent was suffering mental illness as a result

- 28 -

of the lawyer's mother's death; and the lawyer was taking so many absences from his office to attend to the needs of his dying mother-in-law that "he was unaware of his trial schedule." Id. at 395, 400, 784 A.2d at 527, 530. Additionally, although the District Court dismissed with prejudice the case in which the lawyer failed to appear at trial, the lawyer appealed to a circuit court, which modified the judgment to dismissal without prejudice; accordingly, the lawyer's "client ultimately was not prejudiced[.]" Id. at 395, 784 A.2d at 527.

Here, Johnson violated MLRPC 1.3 (Diligence), 1.4(a)(2), 1.4(a)(3), 1.4(b) (Communication), 1.16(d) (Terminating Representation), 8.1(b) (Disciplinary Matters), and 8.4(d) (Conduct that Is Prejudicial to the Administration of Justice). Specifically, Johnson failed to diligently represent Venable, failed to adequately communicate with Venable, failed to take steps to protect Venable's interests after Johnson's representation ended, and failed to respond to Bar Counsel's numerous lawful demands for information. Johnson repeatedly neglected to take necessary steps regarding the child support case, Venable's requests for updates, and Bar Counsel's requests for documents and additional information. Johnson's misconduct injured Venable. Because of Johnson's failure to timely file exceptions to the magistrate's Report and Recommendations and to pay the appearance fee, the clerk's office returned the exceptions, and the circuit court closed the child support case without considering the exceptions.

We note six aggravating factors. First, Johnson engaged in a pattern of misconduct. Johnson failed to file his appearance in the child support case, failed to inform Venable that the case had been closed and the exceptions had been returned, and failed to respond

to Venable's request for updates over the course of more than two weeks. Second, Johnson committed multiple violations of the MLRPC. Third, Johnson engaged in bad faith obstruction of this attorney discipline proceeding by refusing to comply with Bar Counsel's requests for documents and other information, as well as Bar Counsel's discovery requests.[10] Fourth, as the hearing judge found, Johnson has refused to acknowledge his misconduct's wrongful nature. Indeed, in his exceptions, Johnson seemingly blamed the child support case's outcome on Venable for not "pursu[ing] a relationship with his child," and, at oral argument, Johnson asserted that his misconduct did not cause "significant harm" to Venable because Venable could petition the circuit court for a modification of the child support order. Fifth, Johnson had substantial experience in the practice of law; at the time of his misconduct, he had been a member of the Bar of Maryland for more than fifteen years. Sixth, Johnson has demonstrated indifference to making restitution or rectifying his misconduct's consequences. Johnson failed to make any attempt to rectify the consequences of his failure to pay the appearance fee, and he did not refund to Venable the $775 fee for the exceptions, despite the circumstance that the exceptions had been returned.

The hearing judge found that the only mitigating factor was the absence of prior attorney discipline. Indeed, at the hearing, the hearing judge gave Johnson the opportunity

---

[10]We agree with the hearing judge's determination that Johnson's repeated failure to respond to Bar Counsel constituted bad faith. A lawyer's "repeated failure to respond to Bar Counsel constitutes an obstruction of the attorney disciplinary proceeding." Attorney Grievance Comm'n v. Allenbaugh, ___ Md. ___, ___ A.3d ___, Nos. 9 & 25, Sept. Term, 2016, 2016 WL 6299314, at *15 (Md. Oct. 27, 2016). However, unlike the hearing judge, we do not rely on Johnson's failure to file an answer to the Petition for Disciplinary or Remedial Action as a basis for the aggravating factor of bad faith obstruction of this attorney discipline proceeding.

to present mitigating evidence, and Johnson's only response was that he had no prior attorney discipline. Like the hearing judge, we discern no other mitigating factors.

We conclude that the appropriate sanction for Johnson's misconduct is a one-year suspension from the practice of law in Maryland. Johnson's misconduct in representing Venable demonstrated a pattern of neglect and non-responsiveness; Johnson failed to diligently represent Venable, failed to adequately communicate with Venable, falsely advised Venable that a motion for reconsideration had been filed in the child custody case when it had not, and failed to take steps to protect Venable's interests after Johnson's representation ended. Among the many troubling aspects of Johnson's various instances of misconduct were his repeated failures to respond to Bar Counsel's numerous lawful demands for information. It took two letters from Bar Counsel and an extension for Johnson to provide a response to Venable's complaint, and Johnson never responded to any of Bar Counsel's six letters requesting documents and additional information. Johnson's misconduct is aggravated by six factors, including refusal to acknowledge his misconduct's wrongful nature and indifference to making restitution or rectifying his misconduct's consequences. Johnson's misconduct injured Venable by causing the circuit court to close the child support case without considering the exceptions to the magistrate's Report and Recommendations, and is mitigated only by the absence of prior attorney discipline.

Johnson's misconduct is similar to, but more egregious than, that of the lawyers in Harris, 366 Md. 376, 784 A.2d 516 and Gray 433 Md. 516, 72 A.3d 174. In Gray, 433 Md. at 522-23, 524-25, 521, 533, 72 A.3d at 178, 179-80, 177, 184, this Court concluded that

the lawyer had violated MLRPC 1.3, 1.4, 1.15(e), and 8.1(b) in one matter and MLRPC 8.1(b) in another matter, and we suspended the lawyer from the practice of law in Maryland for sixty days. In one matter, the lawyer failed to timely inform a client that she was entitled to certain funds, and did not promptly write a check for the client's funds. See id. at 521-22, 72 A.3d at 177-78. In both matters, the lawyer failed to respond to letters by Bar Counsel; this Court did not conclude that the lawyer violated any MLRPC other than MLRPC 8.1(b) in the second matter. See id. at 523, 520-21, 72 A.3d at 178, 176-77.

Johnson's misconduct warrants a different sanction than that imposed in Gray. Here, the magistrate issued a report and recommendations as to child support; Venable obviously sought to have exceptions filed so that the amount of child support would be lower than what the magistrate recommended. Johnson failed to timely file exceptions by the due date, and instead mailed the exceptions on or after the due date. Moreover, Johnson withheld from Venable the circumstance that the circuit court's Civil Department had returned the exceptions. Johnson incorrectly informed Venable that he had filed a motion for reconsideration. Johnson cavalierly asserted at oral argument that his misconduct did not significantly harm Venable because Venable could seek a modification of the child support order. Furthermore, Johnson's misconduct is aggravated by multiple factors, including bad faith obstruction of this attorney discipline proceeding, a refusal to acknowledge his misconduct's wrongful nature, and indifference to making restitution or rectifying his misconduct's consequences. In Gray, 433 Md. at 525, 72 A.3d at 180, the sole aggravating factor was that the lawyer had recently been reprimanded. Here, given the harm to Venable, Johnson's minimization of the harm, and the multiple aggravating

factors, Johnson's misconduct warrants a sanction that is more severe than a sixty-day suspension.

Johnson's misconduct also warrants a sanction more severe than that imposed in Harris, 366 Md. 376, 784 A.2d 516. Like the lawyer in Harris, id. at 405-06, 784 A.2d at 533, Johnson demonstrated a pattern of lack of diligence by failing to take necessary actions on Venable's behalf. Also, like the lawyer in Harris, id. at 396-97, 399, 400-01, 405, 784 A.2d at 528, 529, 530, 532, Johnson failed to adequately communicate with Venable, and failed to properly terminate his representation. However, unlike the lawyer in Harris, Johnson violated MLRPC 8.1(b). Additionally, in contrast to Johnson, the lawyer in Harris was suffering from several significant personal problems that mitigated his failure to fulfill his professional duties. See id. at 395, 400-01, 784 A.2d at 527, 530. Specifically, the lawyer in Harris had recently undergone "serious cancer surgery[,]" which resulted in complications and aftereffects; the lawyer's mother had recently died; the lawyer's other parent was suffering mental illness as a result of the lawyer's mother's death; and the lawyer was taking so many absences from his office to attend to the needs of his dying mother-in-law that "he was unaware of his trial schedule." Id. at 395, 400, 784 A.2d at 527, 530. By contrast, when given the opportunity to address mitigating factors before the hearing judge, Johnson offered no explanation whatsoever for his lack of diligence and other misconduct, and instead simply noted that he had not received prior attorney discipline.

Another circumstance that weighs in favor of a more severe sanction than the six-month suspension in Harris is that, in Harris, id. at 405-06, 784 A.2d at 533, there were

only two aggravating factors—namely, prior attorney discipline and a pattern of misconduct—whereas Johnson's misconduct is aggravated by six factors. Additionally, while the lawyer in Harris successfully took steps to ensure that his misconduct did not prejudice one of his clients, see id. at 395, 784 A.2d at 527, Johnson took no such action, and his misconduct injured Venable. In short, Johnson has engaged in misconduct for which a reprimand is not the appropriate sanction. And, Johnson's misconduct merits a sanction that is greater than the six-month suspension that this Court imposed in Harris, id. at 406, 784 A.2d at 533.

At the same time, we are not persuaded by Bar Counsel's reliance on Attorney Grievance Comm'n v. Kovacic, 389 Md. 233, 240, 884 A.2d 673, 677 (2005)—in which this Court indefinitely suspended from the practice of law in Maryland a lawyer who had violated MLRPC 1.3 (Diligence), 1.4 (Communication), and 8.1(b) (Disciplinary Matters)—that an indefinite suspension is the appropriate sanction in this case. In Kovacic, id. at 235, 884 A.2d at 674, a client retained the lawyer to represent her in a divorce action. A trial court entered a judgment of divorce, which required the client to get certain marital property appraised and submit to the trial court a Qualified Domestic Relations Order, which would award the client more than $13,000. See id. at 235-36, 884 A.2d at 674-75. The lawyer did not provide the client with the judgment of divorce until over a month after the trial court entered it. See id. at 235, 884 A.2d at 674. On numerous occasions throughout a five-month period after the trial court entered the judgment of divorce, the client attempted to contact the lawyer, who failed to respond. See id. at 235, 884 A.2d at 674. The lawyer also failed to arrange for the appraisal of the marital property and failed

- 34 -

to prepare a Qualified Domestic Relations Order, even though she had five months to do so after the judgment of divorce was entered. See id. at 236, 884 A.2d at 675. The client discharged the lawyer and filed a complaint against her with Bar Counsel. See id. at 236, 884 A.2d at 674. Bar Counsel wrote to the lawyer five times requesting that she respond to the client's complaint; additionally, Bar Counsel telephoned the lawyer on four occasions. See id. at 236, 884 A.2d at 674. Nevertheless, the lawyer never responded to the client's complaint in the nearly-seven-month period between the filing of the client's complaint and the meeting of the Peer Review Panel. See id. at 236, 884 A.2d at 674.

In Kovacic, id. at 236 n.7, 239, 884 A.2d at 675 n.7, 677, after the hearing judge conducted a hearing and filed an opinion, Bar Counsel and the lawyer filed in this Court a Joint Petition For Reprimand By Consent, in which the lawyer admitted that she had violated MLRPC 1.3, 1.4, and 8.1, and advised that she had stopped practicing law and did "not anticipate returning to the practice of law in the foreseeable future." (Internal quotation marks omitted). This Court heard oral argument, at which it was revealed that the lawyer had a medical condition that had prompted her to stop practicing law. See id. at 239, 884 A.2d at 677. "[A]t the conclusion of [oral argument], considering the [lawyer]'s reported medical condition and her expressed willingness to consent to inactive status, it was understood that the option of the [lawyer] taking inactive status would be explored and that th[is] Court would be apprised accordingly." Id. at 236 n.7, 884 A.2d at 675 n.7. In a letter dated more than two months after oral argument, Bar Counsel advised this Court that he and the lawyer had spoken a few times, but he had not received a letter from the lawyer's physician confirming her medical condition or a signed consent to inactive status; in fact,

"'[the lawyer] was not certain that she wanted to consent to inactive status.'" Id. at 236 n.7, 884 A.2d at 675 n.7. Bar Counsel mailed a copy of the letter to the lawyer, who did not contradict his assertions; accordingly, this Court scheduled reargument, which the lawyer failed to attend. See id. at 236 & n.7, 884 A.2d at 675 & n.7. At that point, Bar Counsel recommended that this Court indefinitely suspend the lawyer because she had "abandoned her client's case and there ha[d] been no showing of mitigation." Id. at 236-37, 884 A.2d at 675.

In Kovacic, id. at 240, 884 A.2d at 677, this Court distinguished the case of Attorney Grievance Comm'n v. Tolar, 357 Md. 569, 745 A.2d 1045 (2000), in which this Court imposed a reprimand, on the ground that there were multiple mitigating factors in Tolar. This Court concluded that, in contrast to Tolar, "there [wa]s neither a finding, nor any basis for mitigating the [lawyer]'s misconduct[,]" despite the circumstance that the lawyer had no prior attorney discipline. Kovacic, 389 Md. at 240, 884 A.2d at 677. As to the appropriate sanction, in Kovacic, id. at 240, 884 A.2d at 677, this Court concluded that an indefinite suspension was the sanction that would best protect the public because the lawyer could be "readmitted to practice only on order of this Court, [and] the [lawyer] w[ould] not be permitted to practice until this Court [wa]s satisfied she [wa]s able to do so[.]"

To summarize, in Kovacic, id. at 239, 236 n.7, 884 A.2d at 677, 675, this Court was confronted with the task of determining the appropriate sanction for a lawyer who had stopped practicing law due to a medical condition; who did not plan to resume the practice of law for the foreseeable future because of the medical condition; and who failed to take advantage of an opportunity that this Court provided for the lawyer to pursue being placed

on inactive status.  By contrast, here, there are no circumstances such as those presented in Kovacic.

In this case, Johnson's misconduct was serious, demonstrated a significant disregard for his obligations to his client and Bar Counsel, and merits a sanction that is severe enough to deter similar misconduct in the future.  A one-year suspension is commensurate with Johnson's misconduct, and will protect the public by deterring Johnson and other lawyers from engaging in similar misconduct in the future.

For the above reasons, we suspend Johnson from the practice of law in Maryland for one year.  The suspension will begin thirty days after the date on which this opinion is filed.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JEROME P. JOHNSON.**